**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK E. SISNEROZ, | 1:05-cv-00519-AWI-GSA (PC) |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | (Doc. 23) |
| WHITMAN, et. al., | |
| Defendants. | |

**I.   SCREENING ORDER**

Frank E. Sisneroz ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

The original complaint in this action was filed on April 20, 2005.  Doc. 1.  On August 4, 2005, this Court issued an Order severing plaintiff's claims from those of other plaintiffs listed in the original complaint.  Plaintiff was also ordered to file an amended complaint within thirty (30) days of service of the Order.  Doc. 10.

On August 30, 2005, plaintiff filed a pleading titled "Motion of Response and Objection to Magistrate Order," which was denied.  Doc. 14 & 15.

On March 15, 2006, the Court issued an Order to Show Cause why the case should not be

dismissed for plaintiff's failure to file an amended complaint. Doc. 19. Plaintiff responded to the Order on April 11, 2006, that he did not understand the requirement to file an amended complaint. Doc. 20. On April 13, 2006, the Court issued an Order dismissing the original complaint with leave to amend. Doc. 21. On May 25, 2006, plaintiff filed his first amended complaint. Doc. 23.

A.   **Screening Requirement**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

B.   **Summary of Plaintiff's First Amended Complaint**

It appears that all of plaintiff's allegations pertain to his confinement while in the custody of the Tulare County Sheriff.

Plaintiff's first amended complaint states numerous generic allegations in support of the one stated cause of action - which entails violation of his rights to substantive due process and

equal protection of the law.  For example plaintiff generally states that his rights were violated due to defense: "failure to provide access to County Mental health Legal Advisors, or similar on-site or no-call legal representations;" "failure to provide conditions of life which are normal enough to promote rather than to detract from Plaintiff (sic) chance of lining (sic) with fewer restrictions;" "failure to provide access to a Civil Rights Information Officer;" "failure to provide non-submissive detention indistinguishable and undifferentiated from the incarceration of a convicted criminal;" "failure to provide a less-restrictive alternative that would adequately protect the public, while best promoting Plaintiff (sic) rehabilitation, as was available;" and "failure to provide more considerate treatment and less onerous conditions of confinement than that provided to criminals serving prison terms and persons serving penal county terms."  Doc. 23, pp. 10-11.

As in screening plaintiff's original complaint, the Court, cannot find that the first amended complaint states any cognizable claim(s) for relief against any named defendant.  The Court hereby provides plaintiff with what appears to be the relevant legal authority so that he may draft an adequate second amended complaint.  The legal standards provided below are not intended to be an exhaustive list of claims that may or may not be raised in plaintiff's second amended complaint.  Plaintiff should note that failure to state a cognizable claim in his second amended complaint will result in dismissal of his case.

**C.     Legal Authority**

*1. Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Plaintiff's first amended complaint fails to link a named defendant to the allegedly unconstitutional acts or omissions.

### 2. Rule 8(a)

Further, a plaintiff's complaint **must** satisfy the requirement of Federal Rule of Civil Procedure 8(a), which calls for a "*short and plain* statement of the claim showing that the pleader is entitled to relief." Rule 8(a) expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47.

The Court finds that the allegations of plaintiff's first amended complaint are too generic to put defendants on notice of the actions that allegedly violated plaintiff's rights. In his second amended complaint, plaintiff is urged to list each claim separately and provide a brief statement of facts indicating what acts or omissions he attributes to each defendant that allegedly violated his constitutional rights. Plaintiff should complete the form complaint as completely as possible. Plaintiff is further directed to refrain from using legal references, arguments, and/or jargon as they are inappropriate at the pleading stage.

In addition, plaintiff is not required to tender evidence at this stage in the proceedings and should refrain from submitting attachments. It is inappropriate to attach exhibits to a complaint. See Rule 8, Federal Rules of Civil Procedure. The Court cannot serve as a repository for the parties' evidence. Originals or copies of evidence (i.e., prison or medical records, witness

4

affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a Motion for Summary Judgment, at trial, or when requested by the court).

### 3. *Conditions of Confinement*

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and

responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted).

The Eighth Amendment guarantees sanitation, Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) including personal hygiene supplies such as soap and toothpaste. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996).

The Eighth Amendment guarantees adequate heating." Keenan, 83 F.3d at 1091. Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and the sanitation of the penitentiary." Keenan, 83 F.3d at 1090 (internal quotations and citation omitted).

Requiring inmates to live in constant illumination, under certain circumstances, rise to the level of an Eighth Amendment violation. See Keenan, 83 F.3d at 1090-91.

The denial of adequate clothing may, under certain circumstances, rise to the level of an Eighth Amendment violation. Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994).

The conclusory allegation that plaintiff was deprived of hot food does not support a claim for violation of the Eighth Amendment. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).

Temporarily unconstitutional conditions of confinement do not rise to the level of constitutional violations. See Anderson v. County of Kern 45 F.3d 1310 (9th Cir. 1995) and Hoptowit v. Ray 682 F.2d 1237 (9th Cir. 1982).

The few instances that plaintiff does state specific facts relate primarily to unsanitary conditions of confinement. Plaintiff makes no allegations as to any infliction of pain. Most of

plaintiff's factual allegations pertain to sanitation – linens with holes in them, washing of clothing, access to cleaning/sanitation supplies, and the like. Plaintiff does not state whether he requested replacement items and/or what response, if any, was received. Further, plaintiff does not address the frequency and/or durations of his allegations. Therefore, he fails to state a cognizable claim regarding the conditions of his confinement.

### *4. Access to Law Library and Legal Assistance*

Plaintiff states that he "was not afforded fair access to legal materials and not allowed to do legal research," was not provided "access to County Mental Health Legal Advisors, or similar on-site or no-call legal representation," and was not provided "access to a Civil Rights Information Officer." Doc. 23, pg. 10.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. The State is not required to enable the inmate to discover grievances or to litigate effectively once in court. Id.

Inmates do not have the right to a law library or legal assistance. Id. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury. Id.

Plaintiff has no cognizable right to the legal materials and/or assistance to which he allegedly was denied access.

### *5. Equal Protection*

Plaintiff makes a very general statement that defendants violated his Equal Protection Rights. Doc. 23. Pg. 10.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio

7

School District v. Rodriguez, 411 U.S. 1 (1972).  In order to state a § 1983 claim based on a violation of the equal protection clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren at 1194.

### 6. *Substantive Due Process*

"The concept of substantive due process . . . forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (citation and internal quotation marks).  To establish a claim, "a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." Id. "The Due Process Clause takes effect only if there is a *deprivation* of a protected interest." Id. at 874 (emphasis in original).

"The federal judiciary is not a good-government watchdog:  the Due Process Clause is not the 'Fairness Clause.'"  Nunez v. City of Los Angeles, 147 F.3d 867, 874 (9th Cir. 1998). "There is no general liberty interest in being free from capricious government action."  Nunez v. City of Los Angeles, 147 F.3d 867, 873 (9th Cir. 1998).  "Put simply, not every social injustice has a judicial remedy."  Nunez v. City of Los Angeles, 147 F.3d 867, 874 (9th Cir. 1998).

Plaintiff alleges, without elaboration, that defendants' actions also violated the Due Process Clause.  However, "[t]o establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.  Where a particular amendment provides an explicit textual source of constitutional

8

protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 117 S. Ct. 1845 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).

### 7. *Mail*

Plaintiff alleges only that he "was not afforded the right to send receive sealed, unopened, uncensored mails." Doc. 23, pg. 8.

Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) only as test relates to *incoming mail* - Turner test applies to incoming mail).

### 8. *Freedom of Religion*

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., Amend. I.  Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987).  However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  Id. (quoting Price v. Johnson, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief   that is

central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

"To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 382 U.S. at 349. Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

Prisoners are not required to "objectively show that a central tenet of [their] faith is burdened" in order to raise a viable free exercise claim. Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008). Rather, the belief must be both "'sincerely held'" and "'rooted in religious belief.'" Id. (citing to and quoting Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (quoting Callahan v. Woods, 658 F.2d 679, 683 (9th Cir. 1981))).

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prison officials cannot discriminate against particular religions. See Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curium). Prisons must afford an inmate of a minority religion "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Id. at 322. To succeed on an equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination. Lowe v. City of Monrovia, 775 F.2d 998, 1010

(9th Cir. 1985); FDIC v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991).

Plaintiff's only allegation regarding his religion is that he "was not afforded a fair opportunity to exercise his constitutional rights to freedom of religion... ." Doc. 23, pg. 10. This allegation is not cognizable as it fails to address whether the belief was sincerely held and rooted in religion.

## II.  CONCLUSION

For the reasons set forth above, plaintiff's first amended complaint is dismissed with leave to file a second amended complaint within thirty days. If plaintiff needs an extension of time to comply with this order, plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his second amended complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is also reminded that it is inappropriate to attach exhibits to a complaint. See

Rule 8, Federal Rules of Civil Procedure.  Further, the Court cannot serve as a repository for the parties' evidence.  Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court).  At this point, the submission of evidence is premature as the plaintiff is only required to state a prima facie claim for relief.  Thus, in amending his complaint, plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Finally, plaintiff is advised that Local Rule 15-220 requires that his second amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff must file a second amended complaint curing the deficiencies identified by the court in this order; and
4. If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:  **April 10, 2008**        /s/ **Gary S. Austin**
                                                 UNITED STATES MAGISTRATE JUDGE