# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FRANK E. SISNEROZ,<br><br>        Plaintiff,<br><br>  v.<br><br>WHITMAN, et al.,<br><br>        Defendants.<br>_____/ | 1:05-cv-00519-AWI-GSA PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S DUE PROCESS, FOURTH AMENDMENT, AND PRIVACY CLAIMS, AND ALL OTHER CLAIMS BE DISMISSED FROM THIS ACTION FOR FAILURE TO STATE A CLAIM<br><br>OBJECTIONS, IF ANY, DUE IN 30 DAYS |

## I.     BACKGROUND

Plaintiff Frank E. Sisneroz ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.[1] Plaintiff, a detainee at Coalinga State Hospital ("CSH") in Coalinga, California, and four co-plaintiffs filed this action on April 20, 2005. (Doc. 1.) On August 4, 2005, the plaintiffs' claims were severed and four new actions were opened, leaving Plaintiff as the sole plaintiff proceeding in this action. (Doc. 10.) Plaintiff filed a First Amended Complaint on May 25, 2006, and a Second Amended Complaint on May 12, 2008. (Docs. 23, 34.) On June 1, 2009, the Court consolidated this action with Plaintiff's case 1:08-cv-01971-DLB-PC and ordered this action to proceed on the Second Amended Complaint from this action and the Complaint from case 1:08-cv-01971-DLB-PC, which was moved into this action as

---

[1] Individuals detained pursuant to California Welfare and Institutions Code § 6600 et seq. are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

1

a Supplemental Complaint and filed on June 1, 2009. (Doc. 48.) The Second Amended Complaint and Supplemental Complaint are now before the Court for screening. (Docs. 34, 47.)

## II. SCREENING REQUIREMENT

The in forma pauperis statutes provides that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusion are not. Iqbal, 129 S.Ct. at 1949.

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id..

## III. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is a civil detainee currently housed under the Welfare & Institutions Code § 6600 et seq., known as the Sexually Violent Predator Act. Plaintiff names as defendants Bill Whitman (Tulare County Sheriff), the Tulare County Board of Supervisors, Thomas F. Johnson (Chief, Tulare County Mental Health), and Tulare County Mental Health Services, for violations of his rights under the Fourth Amendment and his constitutional rights to due process, privacy, equal protection, and treatment appropriate to his status as a civil detainee. Plaintiff alleges as follows.

Plaintiff is subject to periodic recommitment hearings in court and is transported to and from the hearings by the Tulare County Sheriff's Department ("Sheriff's Department"). On February 19, 2003, Plaintiff was transported from Atascadero State Hospital ("ASH") to the Tulare County Main

Jail ("Jail"), housed for about twelve days at the Jail to attend a Superior Court hearing, and then transported back. Likewise on April 13, 2004, Plaintiff was transported to the Jail from ASH, housed at the Jail for about twelve days, and transported back. During dates in January 2006, June 2007, and July 2007, Plaintiff was transported from CSH by the Sheriff's Department to and from the Jail for court hearings.

During transportation to the Jail in February 2003 and April 2004, Plaintiff was handcuffed and confined with waist chains and leg chains, endured long layovers at other jail facilities to pick up other inmates, and traveled together in close confinement with male and female state prisoners. Sometimes he waited for hours in the van in the hot sun. Upon arrival at the Jail, Plaintiff was processed through the booking area, held for hours in a holding cell, booked according to his past crimes, photographed, and fingerprinted. He was subject to strip searches during which he was forced to remove all his clothing, open his mouth and lift his tongue, bend over and run his fingers through his hair, spread his legs, lift his penis and scrotum, comb his fingers through his pubic hair, bend at the waist, spread his buttocks with both hands, and cough four times. The strip searches were visible to other inmates and all personnel. Plaintiff was confined to his cell most of the time and not allowed regular showers. The cells, food ports, and showers were filthy. Although Jail inmates were allowed daily phone calls, Plaintiff only had access to the phone one-third of the time. While the penal inmates' cells had a small dayroom with a television and phone and received a daily newspaper, Plaintiff's cell had no dayroom, no television, no working phone, and no access to a daily newspaper. Plaintiff was subject to random cell searches during which he was ordered out of his cell and forced to stand in his boxer shorts in an area visible to other inmates, persons who walked onto the floor, and the wall camera. While working inmates were given clean clothing in good condition each day, Plaintiff was given clothing in poor condition, went days without clean clothing, and had to wash his own clothes. Whenever Plaintiff was moved from floor to floor within the Jail, he was shackled with wrist and ankle chains. While penal inmates were allowed religious privileges, Plaintiff had no such access.

While at the Jail awaiting hearings in June 2007, Plaintiff was handcuffed and shackled with waist chains and leg chains for hours, placed in a holding cell with penal inmates exhibiting unstable

behavior, and was not given physical, mental, or medication check-ups. Plaintiff was fingerprinted and had his picture taken in the presence of four penal inmates. Plaintiff did not receive a physical check, mental check, or medication check. The deputies booked Plaintiff under his former sex-crimes charge, as shown by a big green card labeled "SEX" which could be seen from about twenty feet away. Plaintiff was told to change into county clothes. Plaintiff objected and was taken back to the holding cage where he stayed for four more hours. Plaintiff could not sleep because the wooden benches were too hard. In the morning, Plaintiff was taken to a single cell, went to court, and was transported back to CSH. Plaintiff's back hurt from sleeping on the hard wooden benches.

Plaintiff was similarly treated during transportation from CSH to and from the Jail, and during his housing at the Jail, when he attended court hearings in January 2006 and July 2007.

Plaintiff seeks declaratory relief, monetary relief against Defendants in their individual capacities, injunctive relief against Defendants in their official capacities, and fees and costs of suit.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

Local governing bodies (and local officials sued in their official capacities) can be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. Monell v. Department of Social Services, 436 U.S. 658, 690 (1978). In addition, local governments, like every other § 1983 "person," may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the government's official decision-making channels. Id.

A.      **Conditions of Confinement - Civil Detainee**

Civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 322 (1982) (citation omitted). "[C]ivil detainees retain greater liberty protections than individuals detained under criminal process, and pre-adjudication detainees retain greater liberty protections than convicted ones . . . ." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). Treatment is presumptively punitive when a civil detainee is confined in conditions identical to, similar to, or more restrictive than his criminal counterparts, and when a pre-adjudication civil detainee is detained under conditions more restrictive than a post-adjudication civil detainee would face. Id. at 932-33.

The Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979), within the bounds of professional discretion. Youngberg, 457 U.S. at 321-22. Moreover, "due process requires that the conditions and duration of confinement [for civilly confined SVPs] bear some reasonable relation to the purpose for which persons are committed." Seling v. Young, 531 U.S. at 250, 265 (2001); see also Jones, 393 F.3d at 931. While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir.2001) (applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs). "[C]ivil detainees retain greater liberty protections than individuals detained under criminal process, and pre-adjudication detainees retain greater liberty protections than convicted ones . . . ." Jones, 393 F.3d at 932 (citations omitted). Treatment is presumptively punitive when a civil detainee is confined in conditions identical to, similar to, or more restrictive than his criminal counterparts, and when a pre-adjudication civil detainee is detained under conditions more restrictive than a post-adjudication civil detainee would face. Id. at 932-33.

The Court finds that Plaintiff states a cognizable claim for violation of his rights to substantive due process under the Fourteenth Amendment, based on the allegations that Defendants failed to protect him when they housed him with criminal inmates and labeled him using a big green

5

card labeled "SEX", and otherwise failed to provide constitutionally adequate conditions of transportation and detention for a civil detainee.

### B. Right to Privacy

It is clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most "basic subject of privacy ... the naked body." . See Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir.1985). While the circumstances of institutional life demand that privacy be limited, it is clearly established that gratuitous invasions of privacy violate the Fourteenth Amendment. Id.

Plaintiff alleges he was subject to a strip search within view of other inmates and jail personnel, and that he was forced to stand in his boxer shorts in an area visible to other inmates, persons who walked onto the floor, and the wall camera. The Court finds that Plaintiff states a cognizable claim for violation of his right to privacy.

### C. Fourth Amendment

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches. To determine whether a strip search of an inmate or pretrial detainee is unreasonable, the Supreme Court in Bell balanced "the significant and legitimate security interests of the institution against the privacy interests of the inmates." Bell, 441 U.S. at 558-60. Plaintiff alleges that he was subject to a strip search upon arrival at the Jail, after being processed through the booking area, and that he was subject to random cell searches. The Court finds that Plaintiff states a cognizable Fourth Amendment claim.

### D. Equal Protection

Plaintiff claims his rights to equal protection were violated. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch

6

Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts demonstrating that he is being intentionally discriminated against on the basis of his membership in a protected class, or that he is being intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, the Court finds that Plaintiff fails to state a claim for relief for violation of his rights to equal protection.

## V.    RECOMMENDATION AND CONCLUSION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This action proceed on the Second Amended Complaint filed on May 12, 2008 and the Supplemental Complaint filed on June 1, 2009, on Plaintiff's Fourteenth Amendment substantive due process claims, privacy claims, and Fourth Amendment claims against Defendants Bill Whitman, Tulare County Board of Supervisors, Thomas F. Johnson, and Tulare County Mental Health Services;

2. All other claims be dismissed based on Plaintiff's failure to state a claim; and

3. This action be referred to the Magistrate for initiation of service.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 29, 2010**                              **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE